UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| ARISHA BYARS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THE GOODYEAR TIRE AND RUBBER CO., *et al.*,<br>    Defendants. | Case No. 5:22-cv-01358-SSS-KKx<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER, OR ALTERNATIVELY, DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [DKT. 14]** |
|---|---|

Before the Court is Defendant The Goodyear Tire and Rubber Co.'s ("Goodyear") Motion to Transfer the action to the District Court for the Northern District of Ohio ("Motion to Transfer"), or alternatively, dismiss Plaintiff Arisha Byars' First Amended Complaint ("FAC") ("Motion to Dismiss"). [Dkt. 14]. For the following reasons, both Goodyear's Motion to Transfer and its Motion to Dismiss are DENIED.

## I. BACKGROUND

Byars visited Goodyear's website using her smartphone. [Dkt. 13 at 4, ¶16]. Byars alleges that Goodyear, using a third-party company, embeds code into its chat feature that allows Goodyear to record and transcribe private conversations. [Dkt. 13 at 3, ¶11]. Further, Byars alleges that Goodyear allows a third-party company to intercept, eavesdrop, and store transcripts of the conversations held using the chat feature. [Dkt. 13 at 3, ¶3]. Additionally, Byars states that website visitors using Goodyear's chat feature "share highly sensitive personal data with [Goodyear]." [Dkt. 13 at 4, ¶14].

Upon entering Goodyear's website, visitors are met with a pop-up banner at the bottom of the screen informing visitors that the website uses cookies. [Dkt. 14-2 at 2]. The banner presents visitors with three hyperlinks to click on: (1) a hyperlink to Goodyear's "Privacy Policy"; (2) a hyperlink to view "Cookie Settings"; and (3) a hyperlink to "Accept [the] Cookies." [Dkt. 14-2 at 2]. If visitors click on the "Privacy Policy" hyperlink, visitors are directed to the "Terms, Conditions & Privacy Policy" page. [Dkt. 14 at 13]. If visitors do not click on the "Privacy Policy" hyperlink in the pop-up banner, the "Terms of Use" and "Privacy Policy" hyperlinks are present at the bottom of Goodyear's website in light blue text on a darker blue background. [Dkt. 14 at 14].

Goodyear's "Terms of Use" include a forum selection clause stating that users of Goodyear's website consent to litigating "any legal proceeding directly or indirectly arising out of or relating to the Sites" in Ohio. [Dkt. 14 at 14].

Byars alleges that she neither saw nor affirmatively assented to Goodyear's "Terms of Use." [Dkt. 13 at 4, ¶18].

## II.  Legal Standard

### A.  Motion to Transfer Pursuant to the Forum Selection Clause

Federal law governs the analysis of a forum selection clause. *Jones v. GNC Franchising, Inc.*, 211 F.3d 496, 497 (9th Cir. 2000); *see also Clark-Alonso v. Southwest Airlines Co.*, 440 F. Supp. 1089, 1094 (N.D. Cal. 2020) ("Federal contract law applies to interpret the scope of a forum-selection clause even in diversity actions." (internal quotations omitted)).  If the Court determines that a dispute is covered by a forum-selection clause, the Court must enforce it unless it is shown to be unreasonable under the circumstances. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Subject to Rule 12(b)(6), the Court reviews the complaint for facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level. . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . " *Twombly*, 550 U.S. at 555 (citations and footnote omitted).

In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004).

### III.  DISCUSSION

**A.    Forum Selection Clause**

Goodyear argues Byars consented to the forum selection clause included in its "Terms of Use," which indicated that the courts of Ohio had exclusive jurisdiction over claims arising from the use of its website. [Dkt. 14 at 12].

Goodyear further argues Byars was on notice of its "Terms of Use" because all visitors to Goodyear's website are confronted with a pop-up banner including a hyperlink to its "Privacy Policy," where the "Terms of Use" are available. [Dkt. 14 at 12–14]. Moreover, Goodyear argues its "Terms of Use" is available as a hyperlink at the bottom of every page. [Dkt. 14 at 14]. Byars contends that she was on neither actual nor constructive notice of the "Terms of Use" and therefore did not consent to the forum selection clause. [Dkt. 16 at 11–14]. For the following reasons, the Court agrees with Byars.

Contract formation is governed by state law. *Cordes v. Uber Tech.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). "In California, 'mutual assent [by word or conduct] is the key to contract formation.'" *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018) (quoting *Cordes*, 228 F. Supp. 3d at 988). Two categories of internet contracts have been identified by the Ninth Circuit:

> (1) clickwrap agreements, where visitors to the website are required to check an "I agree" box after being presented with the website's terms and conditions of use; and
>
> (2) browsewrap agreements, where the website's terms and conditions of use are available as a hyperlink at the bottom of the website.

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). The courts have described browsewrap agreements as agreements where "the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Lopez*, 331 F. Supp. 3d at 1098 (internal quotations omitted); *see also Regan v. Pinger*, No. 20-CV-02221-LHK, 2021 WL 706465, at *4 (N.D. Cal. Feb. 23, 2021); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019) ("Browsewrap agreements do not require the

1 user to take any affirmative action to assent to the website terms. [citation]. In some situations, a user may not even know a website has a user agreement.").

Where the internet contract falls into the browsewrap agreement category, it can only be valid if the website owner can show that the website user had actual or constructive notice of the terms and conditions. *Regan*, No. 20-CV-02221-LHK, 2021 WL 706465, at *4. Absent actual notice, a website owner can show constructive notice by showing that: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Here, Goodyear's "Terms of Use" plainly falls into the browsewrap agreement category. While the "Terms of Use" were available if Byars clicked the "Privacy Policy" hyperlink in the pop-up banner, that cannot be considered indicative of a clickwrap. [Dkt. 14-2 at 2]. The "Privacy Policy" hyperlink is included within a pop-up banner asking website visitors to "Accept Cookies," and does not include an "I Agree" box or any other means for website users to accept the "Terms of Use." [Dkt. 14-2 at 2]; *compare with Wilson*, 944 F.3d at 1220 ("Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services."). Moreover, that the "Terms of Use" hyperlink can be found at the bottom of the website [Dkt. 14 at 14], where the website user may or may not look, is consistent with the Ninth Circuit's description of browsewrap agreements. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, (9th Cir. 2014) ("Thus, 'by visiting the website—something that the user has already done—the

-6-

user agrees to the Terms of Use not listed on the site itself but available only by clicking a hyperlink.'") (quoting *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012)).  Accordingly, the Court finds that Goodyear's "Terms of Use" is a browsewrap agreement.

As Goodyear's "Terms of Use" is a browsewrap agreement, it can only be enforceable against Byars if she had actual or constructive knowledge of the "Terms of Use." *Regan*, No. 20-CV-02221-LHK, 2021 WL 706465, at *4 ("Thus, whether there is a valid agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract, which in turn depends on the design and content of the website." (internal quotations omitted)).  Although, the "Terms of Use" can be found at the bottom of the webpage, Goodyear provides no argument suggesting Byars had any reason to scroll to the bottom of the webpage or otherwise saw the "Terms of Use." *See, e.g.*, *Wilson*, 944 F.3d at 1220–21 ("[C]ourts will not enforce agreements where the terms are buried at the bottom of the page or tucked away in obscure corners of the website, especially when such scrolling is not required to use the site.") (internal quotations omitted)).  Moreover, Byars affirmatively alleges in the FAC that she did not see the "Terms of Use." [Dkt. 13 at 4, ¶18].  As such, Byars was not on constructive notice of the "Terms of Use," and it cannot be enforced against Byars.  Therefore, Goodyear's forum selection clause does not apply.

**B.     Failure to State a Claim**

Goodyear argues, in the alternative, that Byars' claim should be dismissed because she fails to allege sufficient facts to show Goodyear violated §§ 631(a) and 632.7 of the California Invasion of Privacy Act ("CIPA"). [Dkt. 14 at 16–25].  Byars argues her FAC plausibly alleges both of her CIPA claims. [Dkt. 16 at 20–33].

### 1. *Claim pursuant to § 631(a)*

Goodyear argues Byars' § 631(a) claim fails because Byars did not allege sufficient facts showing the contents of her communication fell within the scope of CIPA or that the messages were intercepted in transit. [Dkt. 17 at 4–7]. Byars contends that the FAC sufficiently alleges the contents of her communications with Goodyear were intercepted in transit. [Dkt. 16 at 21–27]. The Court addresses these arguments below.

Section 631(a) of CIPA states:

> (a) Any person who, by means of any machine, instrument, or contrivance, or any other manner,
>
> [i] intentionally taps or makes any unauthorized connection whether physically, electrically, acoustically, inductively, or otherwise with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system or,
>
> [ii] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
>
> [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,
>
> is punishable by fine. . .

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (citing Cal. Penal Code § 631(a)).  The Supreme Court of California has simplified § 631(a) as "three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities."  *Tavernetti v. Superior Court of San Diego Cty.*, 583 P.2d 737, 741 (Cal. 1978).  Courts have determined that § 631(a) applies to internet communications.  *Id.*; *see also Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 144107 (9th Cir. May 11, 2022) ("Though written in terms of wiretapping, § 631(a) applies to internet communications.").

Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act.  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).  "Under the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'"  *Id.* (quoting 18 U.S.C. § 2510(8)).  The term "contents" is not intended to include record information, such as the name, address, or subscriber information of a website user.  *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014).  Moreover, the Wiretap Act "defines 'intercept' as the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electric, mechanical, or other device."  *Gonzalez v. Uber Technologies, Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018).  Further, the interception must occur during the transmission, not when the communication is in electric storage.  *Id.*

Here, the Court finds that Byars has pled sufficient facts to state a § 631(a) claim.  Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation.  [Dkt. 13 at 3, ¶11].  "[T]he [FAC's] allegation that user's messages were intercepted in transit

is to be taken as true at this stage of the case." *Campbell*, 77 F. Supp. 3d at 848. Moreover, there is no requirement that Byars specifically allege the exact contents of her communications with Goodyear. Rather, Byars merely needs to show that the contents were not record information, such as her name and address. *Saleh*, 562 F. Supp. 3d at 517–518]. Byars alleges that, using the chat conversation, website visitors share sensitive personal information. [Dkt. 13 at 4]. As such, the chat conversations plausibly contain more than mere record information. Because Byars has pled sufficient facts to show the contents of the communications and that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).

### 2. Claim pursuant to § 632.7

Goodyear argues that Byars' § 632.7 claim fails because: (1) the communication at issue stems from an online chat conversation, as opposed to a phone call, (b) Byars fails to plausibly allege that the transmission occurred between telephones, and (c) Byars fails to plausibly allege any communication with Goodyear. [Dkt. 14 at 23–25]. Byars argues that she has sufficiently alleged a § 632.7 claim because the section applies to communications transmitted by "data" and the term "landline telephone" should be construed to include "computer equipment." [Dkt. 16 at 32–3]. The Court analyzes § 632.7 below.

Section 632.7 states:

(a) Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone,

or a cordless telephone and a cellular radio telephone, shall be
punished by a fine. . .

Cal. Penal Code § 632.7(a). "[C]ourts applying § 632.7 have characterized the statute as prohibiting the intentional recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless telephone." *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818 NC, 2014 WL 465750, at *3 (N.D. Cal. Feb. 3, 2014) (internal quotations omitted).

Here, Byars' alleged communication with Goodyear occurred via Goodyear's chat feature on its website. [Dkt. 13 at 4, ¶16]. Byars accessed Goodyear's website using her smartphone. [Dkt. 13 at 4, ¶16]. As smartphones are cellular phones with web capabilities, Byars' smartphone falls within the cellular phone category. Moreover, courts have applied § 632.7 to internet-based communications and written communications. *See, e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 517 (Cal. Ct. App. 2010) ("[T]his court previously concluded that communication, for purposes of section 632, includes conduct, i.e., the definition is not limited to oral or written dialogues." (internal quotations omitted)); *see also Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at * (C.D. Cal. Aug. 2, 2021) (applying § 632.7 to communications carried out via text message); *Brown v. Google*, 525 F. Supp. 3d 1049, 1073–74 (N.D. Cal. 2021) (concluding that internet-based communications can be included within the scope of § 632.7 where the plaintiff had a reasonable expectation of privacy to the communications). Because Byars' contends that users of Goodyear's website "share highly sensitive personal data" via Goodyear's chat feature, Byars has sufficiently alleged that website users had a reasonable expectation of privacy and therefore the communications fall within the scope of § 632.7.

As for Goodyear's argument that Byars' claim should be dismissed because Byars fails to allege that the communications occurred "between the

requisite telephone devices," [Dkt. 14 at 24], there is no requirement that Byars allege the type of telephonic device used by Goodyear.  *See Roberts v. Wyndham Intern., Inc.*, Nos. 12-CV-5180-PSG, 12-CV-5083-PSG, 2012 WL 6001459, at *4 (N.D. Cal. Nov. 30, 2012) ("Defendants also have not provided any case law supporting their position, and the court also has not identified any cases where a plaintiff was required to allege the type of phone another party used as an element of a Section 632.7 claim.").  Accordingly, Byars sufficiently states a claim pursuant to § 632.7.

## IV.  CONCLUSION

Accordingly, Goodyear's Motion to Transfer, or in the alternative, Motion to Dismiss [Dkt. 14] is **DENIED.**

**IT IS SO ORDERED**.

Dated: February 3, 2023

SUNSHINE S. SYKES
United States District Judge